UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BANK OF AMERICA, N.A., | |
| Plaintiff, | |
| -v- | CIVIL ACTION NO.: 20 Civ. 9911 (SLC) |
| | **OPINION & ORDER** |
| CITY VIEW BLINDS OF N.Y., INC., a New York corporation, COSMOPOLITAN INTERIOR NY CORPORATION, a New York corporation, JLM DECORATING NYC INC., a New York corporation, COSMOPOLITAN INTERIOR FLORIDA CORP., a Florida corporation, and MOSHE GOLD, an individual, | |
| Defendants. | |

**SARAH L. CAVE**, United States Magistrate Judge.

## I.INTRODUCTION

Plaintiff Bank of America, N.A. ("BofA") commenced this action against Defendants City View Blinds of N.Y., Inc. ("City View"), Cosmopolitan Interior NY Corporation ("Cosmopolitan NY"), JLM Decorating NYC Inc. ("JLM"), Cosmopolitan Interior Florida Corp. ("Cosmopolitan Florida") and Moshe Gold ("Gold") (City View and Cosmopolitan NY, together, the "Borrowers," and City View, Cosmopolitan NY, JLM, Cosmopolitan Florida, and Gold collectively, "Defendants") stating claims arising out of Defendants' breach of a loan and security agreement. (See generally ECF No. 1). BofA has moved for summary judgment on each of its claims in the Complaint, and to strike Defendants' affirmative defenses. (ECF No. 38 (the "Motion")). Defendants have not opposed the Motion, and have conceded that they have no legal or factual basis to oppose the allegations in the Complaint or in the Rule 56.1 statement accompanying the Motion. (ECF No. 45 (the "Opposition Letter")).

For the reasons set forth below, the Motion is GRANTED as to BofA's claims for Breach of Contract (the First and Seventh Claims), Foreclosure of Security Interest (the Second Claim), and Breach of Guarantees (the Sixth Claim), and DENIED as to BofA's claims for Replevin (the Third Claim), Conversion (the Fourth Claim), Unjust Enrichment (the Fifth Claim) and Account Stated (the Eighth Claim).  The Third, Fourth, Fifth and Eighth Claims are DISMISSED.  In addition, BofA's request to strike the affirmative defenses is DENIED.

## II. BACKGROUND

### A. Factual Background

Unless otherwise noted, the facts are taken from BofA's Local Rule 56.1 Statement (ECF No. 42), the Affidavit of Tiffany Higgins, a Vice President and Senior Portfolio Officer at BofA (ECF No. 40), the declaration of BofA's counsel (ECF No. 39), and documents (ECF Nos. 39-1–39-5).

On April 8, 2019, BofA entered into a loan agreement (the "Loan Agreement") with the Borrowers, pursuant to which BofA provided the Borrowers a revolving line of credit up to $4.8 million (the "Loan").  (ECF No. 42 ¶ 1; ECF No. 39-2 at 2).  The Loan Agreement was governed by New York law.  (ECF No. 39-2 at 12).  The Borrowers could access the Loan between April 8, 2019 and February 27, 2020 (the "Expiration Date"), or such earlier date as set forth in the Loan Agreement.  (ECF No. 42 ¶ 1; ECF No. 39-2 at 2).

On April 8, 2019 the Borrowers executed and delivered to BofA a security agreement granting BofA a security interest in enumerated collateral (the "Borrowers' Collateral") for the Loan (the "Security Agreement").  (ECF Nos. 42 ¶¶ 4–5; 39-2 at 20–28).  On the same day, Defendant Gold executed a Continuing and Unconditional Guaranty (the "Gold Guaranty") promising to pay BofA "any and all [i]ndebtedness of [the Borrowers] to [BofA] when due,

whether at stated maturity, upon acceleration or otherwise, and at all times thereafter." (ECF No. 39-2 at 30; <u>see</u> ECF No. 42 ¶ 6).

On October 21, 2019, BofA mailed to the Borrowers and Gold (as guarantor) a Notice of Default and Reservation of Rights stating that a default had occurred under the Loan Agreement but advising that BofA would be willing to discuss terms upon which it would consider waiving the default (the "Notice of Default"). (ECF No. 42 ¶ 8; 39-2 at 41).

On February 20, 2020, BofA mailed the Borrowers a Notice of Non-Renewal of the Loan (the "Notice of Non-Renewal"), which reiterated that the Loan would not be renewed beyond the Expiration Date, and that "[o]n the Expiration Date, all outstanding principal, interest and other charges, fees and expenses relating to the [Loan] shall be due and payable in full." (ECF No. 39-2 at 43; <u>see</u> ECF No. 42 ¶ 9). According to the Notice of Non-Renewal, with accrued interest and default interest, the total amount then due was $4,838,437.49. (ECF No. 39-2 at 44).

The following day, February 21, 2020, BofA notified the Borrowers and Gold that as a result of the default, BofA "elect[ed] to accelerate and declare immediately due and payable in full all sums outstanding under the Loan." (ECF No. 39-3 at 3; <u>see</u> ECF No. 42 ¶ 10).

Over the following months, the parties negotiated the restructuring of the Loan Agreement, culminating in an October 7, 2020 Amendment No. 1 to the Loan Agreement ("Amendment No. 1"). (ECF No. 42 ¶¶ 13–14; 39-3 at 12–16). In Amendment No. 1, Borrowers conceded that they had not fully repaid the Loan, and agreed to repay the Loan in full by April 30, 2021 (the "Maturity Date"), in exchange for which BofA waived accrued Default Rate Interest. (ECF No. 39-3 at 12–13). In connection with Amendment No. 1, Defendants JLM and Cosmopolitan FL, by Gold, who was President of each entity, "executed and granted to [BofA] a

certain Continuing and Unconditional Guarantee" to "absolutely and unconditionally" guarantee the Borrower's obligations to BofA (the "JLM and Cosmopolitan FL Guaranty"). (ECF Nos. 42 ¶¶ 16–17; 39-3 at 18–28). The JLM and Cosmopolitan FL Guaranty provides that if they failed to fulfill their duties as guarantors, BofA "shall have all of the remedies of a creditor and, to the extent applicable, of a secured party[.]" (ECF No 39-3 at 23). As additional collateral for the Loan, JLM and Cosmopolitan FL also entered into security agreements on the same date granting BofA a lien and security interest in all their assets (the "JLM and Cosmopolitan FL Security Agreements," these documents together with the Loan Documents, and other documents relating to the Loan, the "Amended Loan Documents") (ECF Nos. 42 ¶ 18; 39-3 at 30–49) (JLM and Cosmopolitan FL's additional collateral combined with the Borrowers' Collateral, the "Collateral"). BofA recorded UCC-1 financing statements (the "UCC Filings") securing its interests in the Collateral. (ECF Nos. 42 ¶ 19; 1 ¶¶ 48–52; 39-4 at 6–16). The UCC Filings reflect BofA's status as the secured party and describe the Collateral. (See ECF No. 39-4 at 6–16).[1]

Notwithstanding Amendment No. 1, the JLM and Cosmopolitan Guaranty, the JLM and Cosmopolitan FL Security Agreements, and the terms of the Amended Loan Documents, Defendants immediately failed to make required payments to BofA. (ECF No. 40 ¶ 22). On October 30, 2020, BofA demanded payment by November 4, 2020 (the "October 30 Demand"). (Id. ¶ 23; ECF No. 39-3 at 52–53). Defendants failed to make any payments. (ECF Nos. 40 ¶ 25; 42 ¶ 24). On November 16, 2020, BofA sent a Notice of Acceleration and Demand for Turnover of Collateral (the "Notice of Acceleration"), demanding the immediate payment by November

---

[1] A UCC-1 is "a legal form that a secured party files to give notice that it has or may have an interest in the personal property of a debtor." N.Y.S. DEP'T OF STATE, File a UCC Financing Statement, available at https://dos.ny.gov/file-ucc-financing-statement (last visited Feb. 22, 2022).

23, 2020 of all money payable to BofA and to make available for turnover all collateral securing the Loan.  (ECF Nos. 39-3 at 56–58; 42 ¶ 25).

Defendants remain in default, having failed to repay the Obligations in full and turn over the Collateral.  (ECF No. 40 ¶ 28).  As of April 26, 2021, Defendants owed "the principal amount of $4,842,632.62, plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees," and other fees.  (Id. ¶ 30).

On August 30, 2011, City View and BofA entered into a corporate credit account agreement (the "Commercial Card Agreement").  (ECF Nos. 39-3 at 60–66; 40 ¶ 31).  After City View defaulted under the terms of the Commercial Card Agreement, BofA sent three default notices to City View.  (ECF Nos. 40 ¶¶ 33, 35; 39-4 at 2–4).  BofA elected to cancel the account and required City View to immediately pay the amount due under the Commercial Card Agreement.  (ECF No. 40 ¶ 36).  City View made a partial payment of $23,255.55, following which, "[a]s of April 26, 2021," it owed "the adjusted sum of $66,101.09, plus accrued interest, accruing interest, and all finance charges, late fees and other charges."  (ECF No. 40 ¶ 38).

### B. **Procedural Background**

On November 24, 2020, BofA filed the Complaint.  (ECF No. 1).  On January 26, 2021, Defendants answered the Complaint.  (ECF No. 27).  On February 25, 2021, the parties consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 34).    On April 30, 2021, BofA filed the Motion and supporting documents, including a certificate of service.  (ECF Nos. 38–43).  On May 20, 2021, BofA asked the Court to consider the Motion fully briefed based on Defendants' failure to respond to or oppose the Motion.  (ECF No. 44).  On May 25, 2021, Defendants filed the Opposition Letter, stating:

Defendant has not disputed that it borrowed money from [BofA], the amount that it borrowed, the fact that it is presently unable to pay the amount demanded, or that [D]efendant executed standard bank documents promising to repay the loan. There is no good faith basis in law or fact to deny those allegations in the Complaint. The Answer filed by Defendants does not do so and, as confirmed by this letter, <u>Defendant does not dispute those statements in the Rule 56.1 Statement filed by [BofA].</u>

(ECF No. 45 at 2 (emphasis added)).  Defendants further stated that they were unable to repay BofA and planned to provide confidential documents reflecting City View's current financial status to assist settlement discussions.  (<u>Id.</u>)

On May 27, 2021, and at the Court's direction, BofA advised that settlement discussions would not be productive and reiterated that the Motion should be granted as unopposed.   (ECF No. 47).

### III. DISCUSSION

#### A. Legal Standards

##### 1. Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor."  <u>Trammell v. Keane</u>, 338 F.3d 155, 161 (2d Cir. 2003).   "The party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute."  <u>Astorga v. Allstate Oil Recovery, Co.</u>,

No. 16 Civ. 5068 (SN), 2018 WL 1441377, at *1 (S.D.N.Y. Mar. 22, 2018) (citing <u>Celotex Corp. v.</u> <u>Catrett</u>, 477 U.S. 317, 322–23 (1986)).

Because Defendants have neither submitted an opposition memorandum of law nor a Rule 56.1 Statement, BofA's Motion "is deemed unopposed and its Rule 56.1 Statements are deemed admitted." <u>Bank of Am., N.A. v. Jacobi Tool & Die M.F.G.</u>, No. 17-CV-6828 (SFJ) (AKT), 2019 WL 3553796, at *4 (E.D.N.Y. Aug. 5, 2019).  Nevertheless, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." <u>Vermont Teddy Bear Co. v. 1-800</u> <u>Beargram Co.</u>, 373 F.3d 241, 242 (2d Cir. 2004).  In making this determination, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." <u>Id.</u> at 244.

### 2.  <u>Applicable State Law</u>

BofA asserts the following claims: (i) Breach of Contract as to the breach of the Loan Agreement (the First Claim) and Commercial Card Agreement (the Seventh Claim); (ii) Foreclosure of Security Interest in the Borrowers' Collateral (the Second Claim); (iii) Replevin as to the Collateral (the Third Claim); (iv) Conversion as to the Collateral (the Fourth Claim); (v) Unjust Enrichment concerning Defendants' possession of the Collateral (the Fifth Claim); (vi) Breach of Guarantees stemming from the default under the Loan Agreement and Amended Loan Documents (the Sixth Claim); and (vii) Account Stated as to the breach of the Commercial Card Agreement (the Eighth Claim).  (ECF No. 1 at 11–18).

This action arises under the Court's diversity jurisdiction, (ECF No. 1 ¶ 1), and therefore, "state substantive law controls." Astorga, 2018 WL 1441377, at *1 (citing DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994)).  The Loan Agreement is "governed and interpreted according to the laws of New York[.]"  (ECF No. 39-2 at 12).

### B. Application

#### 1. Breach of Contract & Breach of Guarantees

To establish a breach of contract claim under New York law, BofA must show "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."  Bank of Am., N.A. v. Vergest Ltd., No. 10 Civ. 4682 (JGK), 2011 WL 92751, at *2 (S.D.N.Y. Jan 11, 2011) (granting unopposed motion for summary judgment for breach of commercial loan agreement) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)).

The elements for a breach of guarantee claim are similar.  BofA must show: "(1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant."  Es-Tee Realty Co. v. Soumekhian, 323 F. App'x 3, 4 (2d Cir. 2008) (quoting Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994)); see VW Credit, Inc. v. Big Apple Volkswagen, LLC, No. 11 Civ. 1950 (PAE), 2012 WL 919386, at *4 (S.D.N.Y. Mar. 15, 2012) ("On a motion for summary judgment to enforce an unconditional guaranty, the creditor must prove the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty.") (citation omitted).  Stated differently, "[i]n an action based on notes and guaranties, a plaintiff may establish prima facie entitlement to summary judgment by demonstrating both the execution of the agreements at

issue and nonpayment thereunder." Signature Bank v. HKD Prods., Inc., No. 12 Civ. 6149 (JFK),
2013 WL 1130247, *2 (S.D.N.Y. Mar. 19, 2013).

The record contains undisputed evidence of the following facts.  The Borrowers entered
into a contract with BofA—the Loan Agreement—for which Gold was a guarantor.  (ECF No. 42
¶¶ 1, 6; ECF No. 39-2 at 2, 30).  The restructuring of the Loan Agreement added Defendants JLM
and Cosmopolitan FL as guarantors of the Loan.  (ECF Nos. 42 ¶¶ 16–17, 39-3 at 18–28).
Borrowers defaulted under the Loan Agreement, then acknowledged their indebtedness to BofA
in connection with Amendment No. 1.  (ECF No. 42 ¶¶ 8, 15).  Defendants, including the
guarantors, remain in default under the terms of Amended Loan Documents, and owe BofA the
principal amount of $4,842,632.62 plus interest and other charges.  (Id. ¶¶ 27, 29).  The record
also establishes that City View entered into a Commercial Card Agreement with BofA, defaulted,
and has failed to pay its obligations under the Commercial Card Agreement, amounting to
$66,101.09 plus interest and fees.  (ECF Nos. 39-3 at 60–66; 40 ¶¶ 31, 33, 35–38; 39-4 at 2–4).

Accordingly, there are no material issues of respect with respect to BofA's claims for
breach of contract based on the Amended Loan Documents and Commercial Card Agreement,
and BofA is entitled to summary judgment on these claims.  See Bank of Am. N.A. v. Vergest, Ltd.,
2011 WL 92751, at *2; Jacobi Tool, 2019 WL 3553796, at *5 (granting summary judgment, finding
a loan agreement, adequate performance by the bank, defendants' nonpayment of obligations
under the loan agreement and damages).

Similarly, there are no disputes of fact concerning BofA's breach of guarantee claim
against Gold, JLM, and Cosmopolitan FL, and BofA is entitled to summary judgment on this claim.
See VW Credit Inc., 2012 WL 919386, at *4 (granting summary judgment on breach of contract

claims against guarantors where debt, failure to perform under the guaranty, and status as guarantors were uncontested); Signature Bank, 2013 WL 1130247, at *2 (granting summary judgment where defendant executed a promissory note for which it failed to make payments, notwithstanding its assertion of conclusory affirmative defenses).

The Court therefore GRANTS BofA's Motion as to its First, Sixth, and Seventh Claims.

### 2.   **Foreclosure of Security Interest**

BofA seeks a judgment "foreclosing upon its security interest in the Collateral, awarding [it] immediate possession of the Collateral, and permitting [it] to dispose of same and apply the proceeds thereof to the obligations and liabilities of the Borrowers in accordance with Article Nine of the Uniform Commercial Code ["UCC"]."  (ECF No. 1 ¶ 54).  BofA bases this claim on Defendants' default under the Loan Agreement and Amended Loan Documents, which also constitutes a default under the Security Agreements, and its proper UCC Filings. (Id. ¶¶ 48–52; see ECF Nos. 1-15–1-18).

Under the New York UCC, "after a borrower defaults, a secured party 'may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest . . . by any available judicial procedure.'"  Jacobi Tool, 2019 WL 3553796, at *6 (quoting N.Y. U.C.C. § 9-601(a)(1)). After a default, "a secured party may take possession of the collateral" either "pursuant to judicial process[] or without judicial process, if it proceeds without breach of the peace."  N.Y. U.C.C. § 9-609(a)(1), (b)(1)–(2).  Additionally, "New York U.C.C. § 9-610 authorizes a secured party to dispose of its collateral, including by selling it, upon a default by the debtor."  Rapillo v. CitiMortgage, Inc., No. 15-CV-5976 (KAM) (RML), 2018 WL 1175127, at *7 (E.D.N.Y. Mar. 5, 2018); N.Y. U.C.C. § 9-610(a).

The record establishes that BofA has a valid and perfected security interest in the Collateral. (ECF Nos. 1 ¶¶ 48–52; 42 ¶ 19; 1-15–1-18). Defendants' default is undisputed, and therefore, "the UCC permits [BofA] to take possession of the Collateral and dispose of it pursuant to Article Nine." Bank of Am., N.A. v. Vanderbilt Trading USA, LLC, No. 17-CV-7167 (RER), 2019 WL 8807747, at *7 (E.D.N.Y. Sept. 9, 2019); see Jacobi Tool, 2019 WL 3553796, at *6. Therefore, BofA is entitled to judgment permitting it to foreclose on its security interest in the Collateral, and the Court GRANTS summary judgment as to BofA's Second Claim.

### 3. Replevin

In support of its Third Claim, for replevin, BofA alleges that "the Borrowers, JLM, and Cosmopolitan FL have wrongfully failed and refused to return the Collateral to [BofA], as required under the Security Agreements, and have illegally continued to maintain possession of same." (ECF No. 1 ¶ 59). BofA seeks a judgment that it is entitled to reclaim the Collateral from the Borrowers, JLM, and Cosmopolitan FL. (Id. ¶ 61).

Under New York law,

[r]eplevin is a remedy employed to recover specific, identifiable items of personal property. A cause of action sounding in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right. A replevin claim against a good-faith possessor accrues when the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it.

Jacobi Tool, 2019 WL 3553796, at *6 (quoting TAP Manutenção e Engenharia Brasil, S.A. v. Int'l Aerospace Grp., 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015) (cleaned up)).

BofA is not entitled to summary judgment on its replevin claim for two reasons. First, although BofA is entitled to take possession of the Collateral in the event of a default, and has a security interest in the Collateral, BofA has not established that its right to the Collateral is

superior to that of Defendants.  See Jacobi Tool, 2019 WL 3553796, at *6 (denying bank's replevin claim in collateral notwithstanding its security interest, because although the collateral was pledged, it was "still own[ed]" by defendants); Vanderbilt Trading, 2019 WL 8807747, at *7 (denying bank's replevin claim and citing Jacobi Tool).  To the contrary, as in these cases, BofA's status was that of a secured creditor.  (ECF Nos. 42 ¶¶ 18–19 (noting BofA had "a blanket lien and security interest"); 1-15–1-18).

Second, equitable claims for replevin, conversion, and unjust enrichment are "unavailable as duplicative where, as here, they are alternative remedies to enforce contractual rights."  Bank of Am., N.A. v. Dexter Sales, Inc., No. 19-CV-0110 (ENV) (JO), 2020 WL 1853133, at *4 (E.D.N.Y. Feb. 27, 2020) (collecting cases and recommending dismissal of bank's replevin, conversion, and unjust enrichment claims), adopted by 2020 WL 4345005 (E.D.N.Y. July 30, 2020); Jacobi Tool, 2019 WL 3553796, at *6 n.5 (noting that the replevin claim appeared to duplicate bank's foreclosure claim, which achieved the same outcome).  BofA's replevin claim is duplicative of its Second Claim.  Therefore, BofA's Motion is DENIED as to the Third Claim, and the Third Claim is DISMISSED.

### 4.  Conversion

In support of its conversion claim, BofA alleges that Defendants were obligated to deliver the Collateral to BofA, but instead have continued to possess and use the Collateral in their business despite their default.  (ECF No. 1 ¶¶ 63–65).  BofA's Fourth Claim thus seeks damages arising from Defendants' conversion of the Collateral.  (Id. ¶ 66).

"The tort of conversion under New York law is defined as 'a defendant exercis[ing] unauthorized dominion over personal property in interference with a plaintiff's legal title or

superior right of possession.'" Vanderbilt Trading, 2019 WL 8807747, at *8 (quoting LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997) (quotation marks and citations omitted and emphasis added).

As with BofA's replevin claim, the conversion claim fails because, notwithstanding BofA's security interest in the Collateral, BofA has not established that its right of possession is superior to that of Defendants. See Vanderbilt Trading, 2019 WL 8807747, *1, 8 (denying bank's conversion claim notwithstanding security agreement that granted bank a security interest in collateral); Jacobi Tool, 2019 WL 3553796, at *7 (finding that bank failed to establish that its security interest was superior to defendants' ownership of collateral). Likewise, the conversion claim is "duplicative of [the] foreclosure claim." Jacobi Tool, 2019 WL 3553796, at *7 n.6; Dexter Sales, 2020 WL 1853133, at *4.

BofA's Motion is therefore DENIED as to the Fourth Claim, which shall be DISMISSED.

### 5. Unjust Enrichment

BofA's Fifth Claim, for Unjust Enrichment, alleges that Defendants have continued to use the Collateral in their business despite their default and have been unjustly enriched "in the amount of the value of the Collateral and any income . . . [they] have realized or received due to their illegal possession" of the Collateral. (ECF No. 1 ¶ 69).

"The theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012) (cleaned up and emphasis added). Accordingly, the existence of a valid written contract governing a subject "ordinarily precludes recovery in quasi contract for events arising out of the same subject

matter." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006) (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388–89 (1987)).

As set forth above (§ II.A, supra), several contracts governed the relationship between the parties concerning the Loan and Collateral.  (See ECF Nos. 39-2–39-4).  As a matter of law, BofA cannot also recover for unjust enrichment.  See Vanderbilt Trading, 2019 WL 8807747, *8; Jacobi Tool, 2019 WL 3553796, *7.

BofA's Motion is therefore DENIED as to the Fifth Claim, which shall be DISMISSED.

### 6.  Account Stated

The Eighth Claim, for Account Stated, seeks a judgment in BofA's favor based on City View's nonpayment of charges due under the Commercial Card Agreement, in the amount of $91,862.79 (as of November 5, 2020), plus other fees.  (ECF No. 1 ¶ 89).  After a partial payment in December 2020, the adjusted sum, as of April 2021, is $66,101.09 plus fees.  (ECF No. 42 ¶¶ 36–37).

Under New York law, an "account stated" is "a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009).  The elements of a claim for amount stated are: "(1) an account was presented; (2) it was accepted as correct; and (3) [Defendant] promised to pay the amount stated." Cvar Von Habsburg Grp., LLC v. Decurion Corp., No. 18 Civ. 11218 (AKH) (GWG), 2020 WL 4577440, at *3 (S.D.N.Y. Mar. 26, 2020) (citation omitted).

It is well-established that "an account stated claim may not 'be utilized simply as another means to attempt to collect under a disputed contract.'"  Arch Specialty Ins. Co. v. TDL Restoration, Inc., No. 18 Civ. 6712 (KMK), 2021 WL 122547, at *10 (S.D.N.Y. Mar. 31, 2021) (denying summary judgment as to account stated claim that stated identical facts and sought identical damages as the breach of contract claim) (quoting 4Kids Ent., Inc. v. Upper Deck Co., 797 F. Supp. 2d 236, 249 (S.D.N.Y. 2011)).  "As a matter of law, a defendant cannot be found liable on both an account stated claim and a breach of contract claim in connection with the same allegations of a failure to pay monies owed."  Arch, 2021 WL 1225447 at *10 (brackets and ellipses removed and citation omitted); see Wachtel & Masyr LLP v. Brand Progression LLC, No. 11 Civ. 7398 (LTS), 2012 WL 523621, at *1 (S.D.N.Y. Feb. 15, 2012) (finding that a "common sense reading" of the complaint suggested claims of breach of contract, account stated, and quantum meruit were pleaded in the alternative, and holding that defendant cannot be liable on both account stated and breach of contract in connection with the same allegations of failure to pay moneys owed); Cobblestone Advisory Grp., LLC v. Lembi Grp. Partners, LLC, No. 10 Civ. 4761 (WHP), 2011 WL 5881187 (S.D.N.Y. Nov. 22, 2011) (holding that "[b]ecause [plaintiff] [sought] to enforce [defendant's] obligations under th[eir] [a]greement, it cannot properly maintain an action for an account stated" and granting defendant's motion for summary judgment on this claim).

BofA's account stated claim is duplicative of and seeks the same damages as its breach of contract claim arising from City View's default in making payments under the Commercial Card Agreement (the Seventh Claim).  (See ECF No. 1 ¶¶ 78–89); Arch, 2021 WL 1225447, at *10

(denying summary judgment as to plaintiff's account stated claim that stemmed from identical facts as breach of contract and sought identical damages).

The Court therefore DENIES BofA's Motion as to the Eighth Claim, which shall be DISMISSED.

**C.** <u>**Request to Strike**</u>

Accompanying its application for summary judgment, BofA seeks an order striking Defendants' affirmative defenses. (ECF No. 41 at 5). BofA alleges that these "bald legal conclusions" fail to create an issue of fact to defeat summary judgment, should be stricken. (<u>Id.</u> at 7–8).

Under Federal Rule of Civil Procedure 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f). "A motion to strike an affirmative defense under Rule 12(f) . . . for legal insufficiency is not favored and will not be granted unless it appears to a certainty that plaintiff[] would succeed despite any state of the facts which could be proved in support of the defense." <u>William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.</u>, 744 F.2d 935, 939 (2d Cir. 1984) (citation omitted), <u>vacated on other grounds</u>, 478 U.S. 1015 (1986). "Motions to strike call for an extreme remedy, and therefore they are disfavored and rarely granted." <u>Vanderbilt Trading</u>, 2019 WL 8807747, *9 (citation omitted). "In order to prevail on a motion to strike, a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." <u>Securities and Exch. Comm'n v. McCaskey</u>, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) (citing <u>William Z. Salcer</u>, 744 F.2d at 939).

BofA's request to strike is denied as moot as to the First, Second, Sixth, and Seventh Claims, because the Court has ruled that it is entitled to summary judgment on those claims.  (See supra, § III.B.1–6).  As to the remaining claims (the Third, Fourth, Fifth, and Eighth Claims), the Court is dismissing those claims as duplicative of the First, Second, Sixth, and Seventh Claims, and, accordingly, BofA's request to dismiss Defendants' affirmative defenses to those claims is also moot.

In addition, BofA's request to strike the affirmative defenses to the Third, Fourth, Fifth, and Eighth Claims fails because BofA has not "explain[ed] how the inclusion of these defenses would prejudice [it]—the third element of the standard." Vanderbilt Trading, 2019 WL 8807747, at *9 n.12; see ECF No. 41.  The Court therefore "declines to exercise its discretion to grant [BofA's] motion to strike the Answer and affirmative defenses related to the remaining claims." Vanderbilt Trading, WL 8807747, at *9 (denying bank's motion to strike affirmative defenses asserted by debtor in action alleging breach of a loan agreement).

Accordingly, BofA's request to strike Defendants' affirmative defenses is DENIED.

## IV. CONCLUSION

In accordance with this Opinion & Order, BofA's Motion is GRANTED as to the claims for Breach of Contract (the First and Seventh Claim), Foreclosure of Security Interest (the Second Claim), and Breach of Guarantees (the Sixth Claim), and DENIED as to the claims for Replevin (the Third Claim), Conversion (the Fourth Claim), Unjust Enrichment (the Fifth Claim), and Account Stated (the Eighth Claim).  The Third, Fourth, Fifth and Eighth Claims are DISMISSED, and BofA's request to strike Defendants' affirmative defenses is DENIED.

By **March 25, 2022**, BofA shall file with the Court and serve on Defendants a proposed judgment consistent with the Court's rulings in this Opinion & Order, including the principal sums of $4,842,632.62 (for breach of the Loan Agreement) and $66,101.09 (for breach of the Commercial Card Agreement), as well as accrued and accruing interest, and all other costs and fees due, along with computations and supporting records.

The Clerk of Court is respectfully directed to close ECF No. 38.

Dated:      New York, New York
            February 25, 2022

                              SO ORDERED.

                              _____
                              SARAH L. CAVE
                              United States Magistrate Judge